UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GEORGE E. JOHNSON, individually and | ) | |
| derivatively as a shareholder of TOTAL LUXURY | ) | |
| GROUP, INC., suing on behalf of all other | ) | |
| similarly situated shareholders of TOTAL | ) | |
| LUXURY GROUP, INC., and in right of TOTAL | ) | |
| LUXURY GROUP, INC., and TOTAL LUXURY | ) | |
| GROUP, INC., an Indiana corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 2:07 CV 214 PPS |
| | ) | |
| SANDY J. MASSELLI, JR., JOSEPH H. | ) | |
| MASSELLI, JOHN MASSELLI, ROBERT D. | ) | |
| BONNELL, MITCHELL BROWN, FIRST | ) | |
| AMERICAN FINANCIAL, INC., | ) | |
| INTERCAPITAL MANAGEMENT, LTD. (#1), | ) | |
| INTERCAPITAL MANAGEMENT, LTD. (#2), | ) | |
| INTERCAPITAL MANAGEMENT CORP., | ) | |
| INTERCAPITAL GLOBAL FUND, LTD., ROCK | ) | |
| CANDY HOLDINGS, LTD., and ARCADIA | ) | |
| ESTATE CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Joint Motion to Enforce Settlement

Agreement [DE114] ("Motion to Enforce"); Total Luxury Group, Inc.'s Request for Hearing

[DE116]; and Defendants' Cross-Motion to Enforce Settlement Agreement or, in the Alternative,

to Deny Plaintiffs' Joint Motion to Enforce Settlement Agreement [DE118] ("Cross Motion").[1]

_____

[1]Plaintiffs also filed a Joint Motion for Leave to file Response to Defendants' Cross-
Motion to Enforce Settlement Agreement or in the Alternative to Deny Plaintiffs' Motion to
Enforce Settlement Agreement [DE121]. Judge Cherry granted that Motion and ordered
Plaintiffs to file their response as a separate docket entry before December 20 [DE122].
Plaintiffs, perhaps inadvertently, re-filed their Motion [DE123]. Nevertheless, this Court has

For the reasons discussed below, these Motions are denied.

## BACKGROUND

Plaintiff George E. Johnson filed this derivative action as a shareholder of then-Defendant Total Luxury Group, Inc. ("TLG") on June 27, 2007.  Johnson alleges that Defendants Sandy E. Masselli, Jr. ("Masselli") and Robert D. Bonnell "engaged in countless acts of fraud, deception, breaches of fiduciary duties, misrepresentations, self-dealing, [and] perjury and false promises."  (Compl. [DE1] ¶ 29.)  Essentially, the Complaint alleges that Masselli, who – at least at one time – was the CEO and Chairman of the Board of TLG, improperly acquired millions of shares of TLG stock with the assistance of Bonnell, a member of TLG's Board of Directors.  (*Id*. ¶ 30.)  The Complaint alleges that those shares were distributed in part to Masselli and/or the other Defendants, many of which are entities he allegedly controls.  (*Id*.)  In addition, the Complaint contends that Masselli and Bonnell orchestrated the improper mergers and/or acquisitions of TLG with other entities.  (*Id*. ¶¶ 30-42.)  The Complaint seeks, among other things, an order prohibiting the transfer of the alleged improperly acquired shares.

After filing the Complaint, Johnson sought a temporary restraining order prohibiting the transfer of those shares and prohibiting Defendants from representing that Masselli is a director or officer of TLG.  (*See* Mot. for TRO [DE55].)  This Court issued a Temporary Restraining Order on August 15 [DE62], reissued it orally on August 17 [DE69] after an initial hearing at which all parties who have filed an appearance were present, and then reduced it to writing on August 22 [DE71].  After this Court ordered the Plaintiffs to post a bond as security for the TRO

---

reviewed all of the parties' submissions, including Plaintiffs' request for sanctions, (*see* Pls.' Mot. for Leave, ex. A [DE121-2] at p. 3).  To the extent Plaintiffs' request is properly before this Court, it is denied.

[DE89], the Court, on Plaintiff TLG's motion, removed the TRO's provisions restricting the

transfer of TLG shares [DE111].

During an October 25 telephonic conference [DE110], the parties requested that I

conduct a settlement conference.  I agreed, and the conference was held on October 30 [DE112].

At the settlement conference, Plaintiffs explained that their primary interest was in acquiring as

many of the shares that they believe Masselli improperly obtained as possible.  That is not

surprising, given that the movement of those shares is also the focus of their Complaint and their

initial TRO requests.  For his part, Masselli maintained that he possesses only 1.9 million shares

of TLG stock, but that he was willing to provide cash in lieu of stock in order to settle the case.

As the conference was winding to a close, it did not appear a settlement was likely.  At the last

minute, Johnson and Masselli individually broke the deadlock and appeared to achieve

agreement on some basic points.  Based on my recollection, those terms included:

1.      Masselli would pay the sum of $300,000.00 to TLG;

2.      Masselli would turn over approximately 4.8 million shares of TLG stock
        in his control or the control of related entities;

3.      Masselli would secure the voluntary dismissal with prejudice of the claims
        that had been filed by the various Defendants against TLG in New Jersey;

4.      TLG would agree to dismiss this suit; and

5.      TLG would refrain from preventing Masselli from transferring TLG
        shares, which had caused some of Masselli's brokerage accounts to be
        frozen.

However, the settlement was subject to the resolution of a number of details that needed to be

worked out between the parties.  Ordinarily, at the conclusion of a settlement conference in my

court, if the conference is successful and the parties have arrived at a full settlement, I require the

3

parties to go on the record to state the terms of the settlement.  This avoids any confusion and misunderstandings that may arise when I go back and forth between the parties during the mediation process.  In this case, given that there was substantial uncertainty on a number of key points, I did not require the parties to state the terms on the record.

According to the subsequent pleadings, things deteriorated rapidly after the settlement conference.  First, there was some ambiguity as to whether TLG would indemnify Masselli from liability and defense costs.  (*See* Cross-Mot. ¶ 2.)  The parties then encountered difficulties regarding the "blocks" on Masselli's various accounts.  (*See id.* ¶ 3.)  This dispute apparently continued even after Masselli obtained an opinion letter from counsel indicating that Masselli was free to transfer the shares at issue.  (*See id.*)  Masselli did, however, remit $300,000.00 as he was required under both parties' versions of the agreement.  (*See* Mot. to Enforce ¶ 5.)  The funds are currently being held by Masselli's counsel in escrow.  (*Id.*)  Finally, Masselli offered 3,469,056 shares of TLG stock, which were in the name of Rock Candy Cosmetics, Inc., apparently left in limbo after a failed transaction.  (*See id.* ¶ 5 n. 1.)  This seems to be the bulk of what Masselli had in mind when he agreed to turn over 4.8 million shares of TLG stock.  But it was not what Plaintiffs had in mind.  (*See* Appendix to Defs.' Cross-Mot. to Enforce Settlement Agreement or, in the Alternative, to Deny Pls.' Joint Mot. to Enforce Settlement Agreement [DE119], Ex. 12 (in an email exchange between counsel noting that "the Rock Candy Cosmetic shares do not count").)  Masselli offered approximately 1.7 million shares from another source and additional cash, but Plaintiffs would not accept.  (*See* Mot. to Enforce ¶ 5.)

At a November 29 telephonic status conference, the parties informed Judge Cherry that a settlement appeared unlikely in the near future [DE115].  Shortly thereafter, the settlement

collapsed entirely and the filings started again.  First, Plaintiffs moved to enforce the agreement

they claim to have obtained.  Defendants responded seeking enforcement of their version of the

agreement.  Not surprisingly, the two versions of "the settlement agreement" are not the same.

As discussed below, that is because there never was a settlement agreement to begin with.

## DISCUSSION

An agreement to settle claims in a federal court is enforceable "just like any other

contract."  *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (quoting *Lynch,*

*Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)).  *See also Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 380-82 (1994).  While "there has been some uncertainty in

[Seventh Circuit] case law over whether state or federal law would govern a suit to enforce a

settlement of a federal suit . . . that . . . uncertainty has been dispelled; it is state law."  *Dillard*,

483 F.3d at 506 (quotation marks omitted).[2]  Because the parties allege their versions of the

purported agreement were made in Indiana, this Court will apply Indiana contract law.

Under Indiana law, an agreement to settle a lawsuit is generally enforceable.  *See, e.g.*,

*Zimmerman v. McColley*, 826 N.E.2d 71 (Ind. Ct. App. 2005) (enforcing oral settlement

---

[2]Defendants rely upon several older cases to argue that federal law governs the
enforcement of an agreement to settle federal claims.  (*See* Br. in Supp. of Defs.' Cross-Mot. to
Enforce Settlement Agreement or, in the Alternative, to Deny Pls.' Joint Mot. to Enforce
Settlement Agreement [DE120] at 2-3 (citing *Taylor v. Gordon Flesch Co.*, 793 F.2d 858 (7th
Cir. 1986); *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450 (7th Cir. 1986); *United States v. Orr*
*Constr. Co.*, 560 F.2d 765 (7th Cir. 1977); *John Boettcher Sewer & Excavating Co. v. Midwest*
*Operating Eng'rs Welfare Fund*, 803 F. Supp. 1420 (N.D. Ind. 1992)).)  To the extent these
cases have not been overruled by the more recent precedent, they simply provide other
requirements for settlement of certain federal claims in addition to "the existence of a binding
agreement under state contract principles."  *Dillard*, 483 F.3d at 507 n. 4.  Regardless, given the
Court's conclusion that the parties never had the requisite "meeting of the minds," it is unlikely
that this choice of law would have any impact on the ultimate disposition of the present Motions.

agreement regarding an automobile accident).  Settlement agreements need not be written to be

enforceable.  *See, e.g.*, *id.* at 77.  *See also Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000).

"Settlement agreements are governed by the same general principles of contract law as any other

agreement," and thus "[a]n offer, acceptance, plus consideration make up the basis for a

contract."  *Zimmerman*, 826 N.E.2d at 76.  *See also Pohl v. United Airlines, Inc.*, 110 F. Supp. 2d

829, 837 (S.D. Ind. 1999).  In addition, "[a] meeting of the minds of the contracting parties,

having the same intent, is essential to the formation of a contract."  *Zimmerman*, 826 N.E.2d at

77.  "The failure to demonstrate agreement on essential terms of a purported contract negates

mutual assent and hence there is no contract."  *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct.

App. 1994).  *See also Schuler v. Graf*, 862 N.E.2d 708, 715 (Ind. Ct. App. 2007) ("If a party

cannot demonstrate agreement on one essential term of the contract, then there is no mutual

assent and no contract is formed.") (quotation marks omitted).  Thus, it is important that there be,

among other things, an "unambiguous settlement offer" in order for there to be a settlement

agreement.  *See Pohl*, 110 F. Supp. 2d at 837.  Moreover, because "[t]he parties to a contract

have the right to define their mutual rights and obligations . . . a court may not make a new

contract for the parties or supply missing terms under the guise of construing a contract."

*Ochoa*, 641 N.E.2d at 1044.  Determining whether there has been a meeting of the minds "is a

factual matter to be determined from all the circumstances," and the Court should not refer to

"the parties' subjective intents but their outward manifestation of it."  *Zimmerman*, 826 N.E.2d at

77.  *See also Schuler*, 862 N.E.2d at 715.

These parties never had an "unambiguous settlement offer," and even if they did there

was never mutual assent – or a meeting of the minds – because there was never agreement as to

6

the essential terms of the settlement.  The single most important item for Plaintiffs is the return

of TLG shares they believe were improperly obtained by Masselli, the other Defendants, and

related entities.  That is the crux of the Complaint and it was the focus of their portion of the

settlement discussions.  For his part, Masselli was simply trying to cobble together as many

shares as he could to appease them.  Therefore, assuming the two groups actually consented to

the wording "Masselli would turn over approximately 4.8 million shares of TLG stock in his

control or the control of his related entities," *supra* at 3, – or as the Plaintiffs put it, that he would

"turn over to Total Luxury Group 4.8 Million shares of Total Luxury Group stock in his control

or the control of his related entities," (Mot. to Enforce ¶ 4) – the parties' minds never met as to

whether that language would allow Masselli to turn over the stock from the failed Rock Candy

transaction.  At a minimum, there was never an "unambiguous settlement offer" because the

phrases themselves were ambiguous as to the pivotal issue of the entire case: whose stock was to

be returned.  Even if it wanted to, this Court is constrained by Indiana law not to insert new

terms into the language of the purported agreement under the guise of construing it.  *See Ochoa*,

641 N.E.2d at 1044.

Despite the fact that the two parties have significantly different recitations of the material

terms of the agreement, (*compare* Mot. to Enforce ¶ 4 (only noting that Masselli agreed to pay

TLG $300,000.00 and "to turn over to [TLG] 4.8 Million shares of [TLG] stock in his control or

the control of his related entities") *with* Cross-Mot. ¶ 1 (listing four others in addition to the two

noted by the Plaintiffs – albeit with different wording – as "basic terms")), this is not a case

where the parties are disputing the materiality of "other material terms" that were not part of the

original bargain, *see, e.g.*, *Dillard*, 483 F.3d at 507.  This "settlement" never even made it that

far.  Instead, this is still a dispute about the ambiguities in the phrasing of the original material

terms.  This is especially true in light of the subsequent events.  It is not as though the parties just

needed time to put meat on the bones.  And even if they had agreed to the two terms they had in

common, this Court would still find that the remaining items constitute material terms to which

the parties had not reached an agreement.

These parties never had a settlement agreement.  That is because the key items they could

agree to were still ambiguous in ways that are critical to the parties' interests in this case.  The

parties agreed that an exchange of approximately 4.8 million shares of TLG stock and

$300,000.00 was essential, but there were still too many questions to find an agreement.  Whose

stock would be exchanged?  Where would it come from?  How much would Masselli retain?

These and many other questions still remained.  The present motions to enforce must be denied

because there is no agreement to enforce.

*   *   *

Still pending before the Court is the Defendants' Motion to Transfer Venue [DE81]. That

motion was put on hold while the parties were attempting to settle this matter.  With that effort

now by the wayside, a ruling on the Motion to Transfer Venue will be coming forthwith.

**CONCLUSION**

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Plaintiffs' Joint Motion to Enforce Settlement Agreement [DE114] is
        **DENIED**;
2.      Movant Total Luxury Group, Inc.'s Request for Hearing [DE116] is
        **DENIED**;
3.      Defendants' Cross Motion to Enforce Settlement Agreement or, in the
        Alternative, to Deny Plaintiffs' Joint Motion to Enforce Settlement
        Agreement [DE118] is **DENIED**; and
4.      Plaintiffs' request for sanctions against Defendants, (*see* Pls.' Joint Mot.

8

for Leave to file Resp. to Defs.' Cross-Mot. to Enforce Settlement
Agreement or in the Alternative to Deny Pls.' Mot. to Enforce Settlement
Agreement, Ex. A [DE121] at p. 3) is **DENIED**.

**SO ORDERED**.

ENTERED: January 2, 2008

<u>s/ Philip P. Simon</u>
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT